IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Carolyn Hamilton, ) | |
| ) | C/A No. 2:10-CV-1740-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| OSI Collection Services, Inc.; NCO ) | |
| Financial Systems, Inc.; and NCO ) | |
| Customer Management, Inc., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on Plaintiff Carolyn Hamilton ("Plaintiff")'s motion to remand. ECF No. 11. The motion is fully briefed and properly before the court for consideration. The court has thoroughly reviewed the parties' papers and the relevant portions of the record and finds the motion suitable for disposition on the papers, without oral argument. Therefore, for the reasons that follow, the court hereby **GRANTS** Plaintiff's motion to remand. ECF No. 11.

I.   **BACKGROUND**

In April 2006, Defendants hired Plaintiff to work as a Financial Representative. See Compl. ¶ 6, ECF No. 1-1 at 3. The Complaint does not describe Plaintiff's work arrangements for the first year of her employment, but states that "[o]n or about February 2007, Defendants removed . . . Plaintiff to work at home in the Home Work Program." Id. at ¶ 7. Plaintiff asserts that in order to work from home, she needed to log in remotely and therefore required cable service. Id. at ¶ 8. She alleges that Defendants agreed to be responsible for the payment of that cable service, but then "[u]nbeknownst to Plaintiff . . . Defendants' [sic] switched the cable bill into . . . Plaintiff's name."

1

Id. at ¶¶ 8–9. Plaintiff alleges that when she complained that Defendants were neither paying the cable bill as per their agreement, nor compensating her for time she spent addressing computer connection problems, Defendants retaliated against her, ultimately by terminating her employment. Id. at ¶¶ 11, 15, 16.

Plaintiff filed this action in the Court of Common Pleas for Charleston County on June 4, 2010, asserting four causes of action based on the above alleged facts. First, Plaintiff contends that she was terminated in violation of public policy. Specifically,

> That the unjust discharge and termination of Plaintiff's employment with the Defendant was the response of the Defendant, it's [sic] agents and servants, to Plaintiff's continuing complaints regarding Defendant's illegal conduct by their failure to pay full wages, bonuses, benefits, and expenses owed to the Plaintiff by the Defendant.

Id. at ¶ 24. Second, Plaintiff alleges that Defendants' failure to pay for the cable service amounted to a breach of contract. Id. at ¶¶ 25–28. Third, Plaintiff alleges that her termination breached her employment contract. Id. at ¶¶ 29–33. Finally, Plaintiff contends that "Defendant[s] wrongfully withheld Plaintiff's pay and the Defendant[s] should be required to pay the Plaintiff for all wages due, including interest, wages earned, and vacation/personal leave payments," pursuant to the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10, et seq. Id. at ¶¶ 35–36. In connection with this final claim, Plaintiff "believes that she is entitled to an award of damages, treble damages, costs, and attorneys' fees against Defendants in an amount to be determined by the trier of fact, pursuant to the South Carolina Payment of Wages Act." Id. at ¶ 39. The prayer for relief includes the following limitation on damages:

> [Plaintiff seeks j]udgment against the Defendants, in such an amount of actual damages, punitive damages, attorney fees, costs of this action and any other relief this Honorable Court deems allowable under law, and just and proper, such amount being

less than $74,000.00.

Id. at 4. The Complaint is signed by Plaintiff's counsel of record in this action, Jarrel L. Wigger. Id. at 5.

Defendants jointly removed the case to federal court on diversity grounds, 28 U.S.C. §§ 1332, 1441 and 1446, on July 2, 2010. Notice of Removal 1, ECF No. 1. In doing so, Defendants acknowledged that Plaintiff's Complaint purports to limit the damages sought, but nevertheless asserted that removal was proper, because "[b]ased upon the multi-part Prayer for Relief, it does not appear to a legal or factual certainty that Plaintiff is seeking less than $74,000 for the totality of the claims, damages and attorney's fees."[1] Id. at ¶ 12. Defendants emphasized that Plaintiff had not responded to Defendants' requests that Plaintiff enter a stipulation that she does not seek to recover and will not accept an award in any amount greater than $73,999. Id. at ¶¶ 12–13. Plaintiff moved to remand on July 15, 2010. ECF No. 11.

## II.  LEGAL STANDARD

A defendant has the right to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). Thus, where the basis for federal jurisdiction is diversity, a defendant has the right to remove any action in which, at the time of removal, the matter in controversy exceeds $75,000 and is between completely diverse parties. 28 U.S.C. § 1332(a). If, however, removal is challenged, the defendant bears the burden of establishing that federal jurisdiction is proper and the thumb is on the scale in favor of remand.

---

[1] At times, the parties appear to be under the misapprehension that the relevant jurisdictional amount in controversy is $74,000. The diversity statute, however, actually requires an amount in controversy that "exceeds the sum or value of $75,000, exclusive of interest or costs." 28 U.S.C. § 1332(a). The difference has no effect on the court's analysis.

Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). Because federal courts are courts of limited jurisdiction and removal implicates serious federalism concerns, removal restriction is strictly construed in favor of state court jurisdiction—i.e., "[i]f federal jurisdiction is doubtful, a remand is necessary." Id.

"As a general rule, the sum claimed by a plaintiff in his complaint determines the jurisdictional amount, and a plaintiff may plead less than the jurisdictional amount to avoid federal jurisdiction." Jones v. Allstate Ins. Co., 258 F. Supp. 2d 424, 427 (D.S.C. 2003) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938)). In other words, "the plaintiff is the master of his or her claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy." Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, 14A Federal Practice and Procedure § 3702. Based on these long-standing principles, many courts, including several in this district, have "declined to adopt an approach under which the court undertakes its own independent review of the amount in controversy despite a specific limitation on damages in the plaintiff's complaint." Jones, 258 F. Supp. 2d at 427 n.2 (citing Spann v. Style Crest Prods., Inc., 171 F. Supp. 2d 605, 608–09 (D.S.C. 2001)); see also Richardson v. BP Am., Inc., No. 2:09-0945-PMD, 2009 WL 3060389, at **1 (D.S.C. Sept. 24, 2009); Brooks v. GAF Materials Corp., 532 F. Supp. 2d 779, 782–83 (D.S.C. 2008); Cook v. Medtronic Sofamor Danek, USA, Inc., No. 9:06-CV-01995-RBH, 2006 WL 2171130, at **2–3 (D.S.C. July 31, 2006). Some other courts have taken a different approach, permitting removal in spite of a complaint's express limitation on damages, provided the defendant can produce evidence that establishes, by a preponderance of the evidence, that the actual amount in controversy exceeds $75,000. See Dash v. FirstPlus Home Loan Owner Trust 1996-2, 248 F. Supp. 2d 489, 497–98 (M.D.N.C. 2003) (citing De Aguilar v. Boeing

4

Co., 47 F.3d 1404, 1412 (5th Cir. 1995); McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481, 485 (S.D. W. Va. 2001)). The Fourth Circuit has yet to squarely address the issue.

III. **ANALYSIS**

Plaintiff's motion to remand challenges diversity jurisdiction on two grounds. First, Plaintiff argues that there is no diversity of citizenship, because "Plaintiff worked for Defendants in Charleston and Defendants transact business in the State of South Carolina . . . . Defendants have clearly surrendered themselves to the jurisdiction of the state court by their actions." Pl.'s Mot. 1–2, ECF No. 11. Second, Plaintiff argues that this court does not have diversity jurisdiction, because the Complaint expressly limits Plaintiff's damages to an amount below the requisite amount in controversy. Id. at 1.

Plaintiff's diversity of citizenship argument confuses the issue of personal jurisdiction (i.e., whether a defendant has sufficient minimum contacts with a forum to be haled into court there) with the question of diversity of citizenship for purposes of federal subject matter jurisdiction, exercised pursuant to 28 U.S.C. § 1332. Citizenship of a corporation for diversity purposes is determined pursuant to the "nerve center" set forth in the United States Supreme Court's recent decision in Hertz Corp. v. Friend, 130 S. Ct. 1181, 1192 (2010). Defendants aver, and Plaintiff does not dispute, that their "nerve center" is their corporate headquarters in Horsham, Pennsylvania.

With regard to Plaintiff's argument that the amount in controversy has not been met, Defendants contend that the case was properly removed because "Plaintiff is unwilling to affirmatively stipulate that she will not seek a judgment or award exceeding $75,000," and "the preponderance of the evidence shows that the amount in controversy exceeds the $75,000 jurisdictional minimum for federal jurisdiction." Defs.' Resp. 1, 2, ECF No. 14. The court is not

5

persuaded by Defendants' arguments.

The courts that have opted to look beyond a plaintiff's stated limitations on damages have generally cited two practical considerations in support. First, "[t]he majority of states now . . . have followed the example of Fed. R. Civ. P. 54(c) and do not limit damage awards to the amount specified in the ad damnum clause of the state pleading." De Aguilar, 47 F.3d at 1410. Second, since the Supreme Court's decision in St. Paul, Congress has imposed a limitation on diversity removal, only allowing removal on these grounds for one year after the action is filed. 28 U.S.C. § 1446(b). See Cook, 2006 WL 2171130, at **3 (discussing cases). Given these developments, some courts have expressed concern that allowing a plaintiff's statement of limitation to end the inquiry could encourage disingenuous pleading with either "the knowledge that [the claimant] may be able to evade federal jurisdiction by virtue of the pleading," or the intention to amend the pleading's damages clause following the expiration of the one-year limitations period, at which point a defendant would be barred from removing the action. See De Aguilar, 47 F.3d at 1410; Cook, 2006 WL 2171130, at **3.

While these are valid concerns, the court is in agreement with those courts that have "declined to adopt an approach under which the court undertakes its own independent review of the amount in controversy despite a specific limitation on damages in the plaintiff's complaint." Jones, 258 F. Supp. 2d at 427 n.2 (citing Spann, 171 F. Supp. 2d at 608–09). This position is consistent with long-standing Supreme Court precedent regarding removal of diversity actions: "If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." St. Paul, 303 U.S. at 294 (emphasis added). Furthermore, the court is not convinced that

Plaintiff could both succeed on this remand motion and then seek damages beyond the amount in controversy. South Carolina has adopted a version of Rule 54(c), which provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings," SCRCP 54(c); but, in 1986 it added a sentence to a different rule of procedure, which provides that "a party may plead that the total amount in controversy shall not exceed a stated sum <u>which shall limit the claim for all purposes</u>." SCRCP 8(a) (emphasis added). Other courts in this district have noted the potential for conflict between these rules if a plaintiff whose claims were remanded later sought damages above and beyond the jurisdictional amount, <u>see, e.g.</u>, <u>Brooks</u>, 532 F. Supp. 2d at 782; <u>Cook</u>, 2006 WL 2171130, at **2, n.2; however, to the court's knowledge, this situation has yet to arise in the South Carolina State courts. It would seem to this court that principles of estoppel would apply to give effect to Rule 8(a) over Rule 54(c) under these circumstances but, in any event, it is premature to assume that the state courts would hold otherwise.

Furthermore, this court will not presume that Plaintiff's counsel has dishonestly pled to avoid removal:

> Every lawyer is an officer of the court. And, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal. So, plaintiff's claim, when it is specific and in a pleading signed by a lawyer, deserves deference and a presumption of truth. We will not assume—unless given reason to do so—that plaintiff's counsel has falsely represented, or simply does not appreciate, the value of his client's case. Instead, we will assume that plaintiff's counsel best knows the value of his client's case and that counsel is engaging in no deception. We will further presume that plaintiff's counsel understands that, because federal removal jurisdiction is in part determined by the amount of damages a plaintiff seeks, the counsel's choices and representations about damages have important legal consequences and, therefore, raise significant ethical implications for a court officer.

<u>Burns</u>, 31 F.3d at 1095. Defendants argue that Plaintiff's refusal to enter into a stipulation that she

will not seek a judgment or award exceeding $75,000 is conclusive evidence "that plaintiff's statement regarding the amount in controversy in the Complaint is a sham, and is not truly intended to limit her potential recovery to less than $74,000 as pled." Defs.' Resp. 2, ECF No. 14. There are, however, many reasons why an attorney might decline to enter into a stipulation that he or she believed to be unnecessary. More importantly, to find that Plaintiff's motion to remand depends upon her executing such a stipulation would have the practical effect of relieving Defendants of their burden and shifting it to Plaintiff.

In considering whether Defendants had the right to remove, the court must look to the complaint at the time that Defendants' notice of removal was filed. Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939); see also Burns v. Windsor Ins., Co., 31 F.3d 1092, 1097 (11th Cir. 1994) ("The possibility that plaintiff may in the future seek or recover more damages is insufficient to support federal jurisdiction now."); Woodward v. Newcourt Commercial Fin. Corp., 60 F. Supp. 2d 530, 531 (D.S.C. 1999) ("The proper time for testing the sufficiency of the jurisdictional amount is when the case is removed."). At the time Defendants filed the Notice of Removal, Plaintiff was explicitly seeking "less than $74,000.00 " in damages. Compl. 4, ECF No. 1-1 at 6. As such, looking only to Plaintiff's Complaint, the amount in controversy requirement was plainly not met and the court lacked diversity jurisdiction over the action at the time it was removed.

Even were the court to look past the Complaint's limitation on recovery, Defendants have failed to produce evidence that establishes, by a preponderance of the evidence, that the actual amount in controversy exceeds $75,000. See Dash, 248 F. Supp. 2d at 498 (quoting De Aguilar, 47 F.3d at 1412). Instead, Defendants offer little more than a summary conclusion that because Plaintiff seeks multiple types of damages, which include, "[a]s part of her wage payment claim . . . treble

damages" the jurisdictional requirement has necessarily been met:

> Assuming for the sake of plaintiff's remand motion that plaintiff was earning a base salary of $9.50 per hour, exclusive of benefits, and that plaintiff is awarded nothing other than 1 year of back pay, plus reasonable (1/3) attorneys fees and treble damages, it cannot be reasonably disputed that the amount in controversy exceeds $75,000.

Defs.' Resp. 3, ECF No. 14. There is, however, nothing in the record that supports Defendants' speculative damages calculation. Through the Complaint, Plaintiff appears to allege that Defendants wrongfully refused to pay her wages for the time that she spent addressing computer maintenance issues. See Compl. ¶ 10, ECF No. 1-1 at 4. Nowhere does Plaintiff allege that Defendants did not pay her for anything close to an entire year's worth of work. Moreover, there is nothing in the Complaint (and Defendants offer no evidence) indicating whether Plaintiff worked full-time or part-time or how much she was paid. Therefore, even assuming the court were to apply the "preponderance of the evidence" analysis that Defendants advocate, Defendants have offered nothing more than mere speculation insufficient to satisfy such a burden. See, e.g., Bartnikowski v. NVR, Inc., No. 09-1063, 2009 WL 106378, at **4 (4th Cir. Jan. 16, 2009) (affirming district court order remanding action where defendant's estimate as to plaintiff's potential damages were "fatally undermined by the wholly unsupported assumption on which its calculations ultimately rest—that Plaintiffs . . . will each claim to have worked an average of five hours of overtime per week").

## IV. CONCLUSION

For the reasons stated above, this court concludes that this action was removed improvidently and it is without jurisdiction. Therefore, the plaintiff's motion to remand is **GRANTED.** ECF No. 11. This case is hereby **REMANDED** to the South Carolina Court of Common Pleas for Charleston County.

IT IS ORDERED.

/s/ Margaret B. Seymour
United States District Judge

October 20, 2010
Columbia, South Carolina